UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                              :
UNITED STATES OF AMERICA                                      :
                                                              :
              -v.-                                            :        **SEALED INDICTMENT**
                                                              :
NEIL PHILLIPS,                                                :        22 Cr.
                                                              :
              Defendant.                                      :
                                                      22 **CRIM** 138
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**COUNT ONE**
**(Conspiracy to Commit Commodities Fraud)**

The Grand Jury charges:

Overview of the Scheme

1.    In or about December 2017, NEIL PHILLIPS, the
defendant, and others engaged in a scheme to artificially
manipulate the United States dollar ("USD")/South African rand
("ZAR") exchange rate.  PHILLIPS manipulated and sought to
manipulate the USD/ZAR exchange rate in order to fraudulently
trigger a payment under a barrier options contract into which
his hedge fund had entered.  Under this barrier options
contract, PHILLIPS' hedge fund and a client of PHILLIPS' hedge
fund were, collectively, entitled to a $20 million payment if
the USD/ZAR exchange rate fell below a particular level at any
time on or before a particular date.

2.    On December 26, 2017 ("Boxing Day 2017"), NEIL
PHILLIPS, the defendant, engaged in foreign currency exchange
spot transactions in which PHILLIPS' hedge fund exchanged

hundreds of millions of USD in return for ZAR. PHILLIPS engaged

in these USD/ZAR spot transactions for the purpose of

intentionally and artificially driving the USD/ZAR exchange rate

below the threshold level set by the barrier options contract in

order to trigger the $20 million payment and defraud the

counterparties to the options contract.

## Relevant Individuals and Entities

3.   At all times relevant to this Indictment, NEIL

PHILLIPS, the defendant, was the co-founder and co-Chief

Investment Officer of a hedge fund based in the United Kingdom

("Hedge Fund-1").

4.   Hedge Fund-1 was a global "macro" hedge fund that

focused on macroeconomic trends and emerging markets, and on the

foreign exchange markets and currency and commodity products.

NEIL PHILLIPS, the defendant, co-founded Hedge Fund-1 in or

about 2015.  At all times relevant to this Indictment, Hedge

Fund-1 was registered as a commodity pool operator with the

Commodity Futures Trading Commission (the "CFTC") and PHILLIPS

was registered with the CFTC as associated with Hedge Fund-1.

## Relevant Background and Terminology

5.   The foreign currency exchange ("FX") market is a

global market in which participants trade currencies in pairs.

In a currency pair, each currency is valued relative to the

2

other. The ratio that expresses the value of one currency in relation to the other is commonly referred to as the "exchange rate" or the "rate."

6.    The USD/ZAR is one such currency pair.  An exchange rate of 12.50 USD/ZAR would thus reflect that a party could sell one USD in return for 12.50 ZAR.

7.    There is no single, official marketplace for FX transactions.  Customers trade directly with FX dealer banks. Several of these banks are global banks that are able to exchange many of the world's currencies, in large amounts, upon a customer's request.

8.    FX "spot" trades involve one party agreeing to receive a particular currency in exchange for delivering a different currency, at an agreed-upon price and quantity.  The actual exchange of the currencies (i.e. the trade "settlement") in connection with these FX spot transactions typically take place two business days after the parties agree on the terms of the transaction.

9.    A substantial portion of FX spot transactions involving the USD, including the USD/ZAR currency pair, are settled through a third-party settlement bank that is headquartered in Manhattan, New York (the "Settlement Bank"). The Settlement Bank maintains a matching and settlement system

3

for member institutions engaged in FX transactions. At all times relevant to this Indictment, the Settlement Bank settled FX transactions in approximately 18 currencies, including the USD and the ZAR. The Settlement Bank conducted multilateral netting of all of its member institutions' transactions in all 18 currencies on a daily basis. With respect to the USD, the multilateral netting process occurred multiple times per day. Following this multilateral netting process, the Settlement Bank calculated whether its member institutions either owed USD or were entitled to receive USD. The USD portion of all FX transactions settled by the Settlement Bank flowed in and out of bank accounts held at the Federal Reserve Bank of New York.

The $20 Million One Touch Option

10. On or about October 30, 2017, Hedge Fund-1 purchased a "one touch" digital barrier option for the USD/ZAR currency pair with a notional value of $20 million, a barrier rate of 12.50, and an expiration date of January 2, 2018 (the "$20 Million One Touch Option"). Under the terms of the $20 Million One Touch Option, in the event that the USD/ZAR exchange rate went below 12.50 at any point prior to on or about January 2, 2018, Hedge Fund-1 would be entitled to a $20 million payment.

11. Hedge Fund-1 purchased the $20 Million One Touch Option through a financial services firm ("Intermediary Firm-1")

4

that facilitates trades on behalf of underlying clients. Intermediary Firm-1 permits its underlying clients to maintain anonymity in such transactions. The party that was ultimately obligated to pay $20 million in the event the $20 Million One Touch Option was triggered was a subsidiary of a bank headquartered in Manhattan, New York ("Bank-1"). Hedge Fund-1 and Bank-1 were not aware of the identity of their respective counterparties to the $20 Million One Touch Option contract.

12. Hedge Fund-1 subsequently allocated the notional value of the $20 Million One Touch Option such that Hedge Fund-1 would receive $15,660,000 and a fund that was a client of Hedge Fund-1 ("Client Fund-1") would receive the remaining $4,340,000 in the event that the $20 Million One Touch Option was triggered.

13. A bank that is headquartered in Manhattan, New York ("Bank-2"), acted as Hedge Fund-1's prime broker in connection with the $20 Million One Touch Option. After Hedge Fund-1 entered into the $20 Million One Touch Option, Bank-2 provided Hedge Fund-1 with a letter agreement that set forth the terms and conditions of the transaction. This letter agreement stated, among other things, that Hedge Fund-1 would be "acting in good faith and in a commercially reasonable manner" as the "Calculation Agent" in connection with the $20 Million One Touch Option and that Hedge Fund-1's "determinations and calculations"

5

would be "binding in the absence of manifest error."  The letter
agreement incorporated by reference the "2005 Barrier Option
Supplement" published by the International Swaps and Derivatives
Association, Inc.  The 2005 Barrier Option Supplement stated,
among other things, that the "Barrier Determination Agent" is
"the party who determines whether or not a Barrier Event has
occurred and provides notice if it determines that a Barrier
Event has occurred" and that the "Barrier Determination Agent
shall be the Calculation Agent" unless otherwise specified.  The
2005 Barrier Option Supplement further stated that the
"occurrence of a Barrier Event shall be determined in good faith
and in a commercially reasonable manner by the Barrier
Determination Agent."

### The Events Leading Up To Boxing Day 2017

14.  On or about October 30, 2017, the date that Hedge
Fund-1 purchased the $20 Million One Touch Option, the USD/ZAR
exchange rate was over 14.00.  Between early November 2017
through on or about December 15, 2017, the USD/ZAR exchange rate
fluctuated between approximately 14.50 and approximately 13.15.

15.  December 16 and December 17, 2017, fell on a weekend.
On or about Monday, December 18, 2017, following the
announcement that a particular candidate ("Candidate-1") had
been elected as president of the African National Congress

6

political party in South Africa, the USD/ZAR exchange rate
lowered substantially, dropping to as low as approximately
12.52.  But the USD/ZAR exchange rate did not fall lower than
12.50 on or about December 18, 2017, and thus Hedge Fund-1's $20
Million One Touch Option was not triggered.

16.  Between on or about December 19, 2017, and on or about
December 24, 2017, the USD/ZAR exchange rate did not fall below
12.50, and, accordingly, Hedge Fund-1's $20 Million One Touch
Option was not triggered.

### PHILLIPS Intentionally Manipulates the USD/ZAR Rate on Boxing Day 2017

17.  With the $20 Million One Touch Option set to expire in
a matter of days, on Boxing Day 2017, NEIL PHILLIPS, the
defendant, engaged in a scheme to intentionally and artificially
manipulate the USD/ZAR exchange rate to drive the rate below
12.50 and trigger payment under the $20 Million One Touch
Option.  PHILLIPS caused and sought to cause the USD/ZAR
exchange rate to fall below 12.50 by engaging in FX spot trades
in which he caused hundreds of millions of USD to be exchanged
for ZAR.  PHILLIPS engaged in this USD/ZAR FX spot trading for
the express purpose of artificially driving the USD/ZAR rate
below 12.50.  In particular, by selling a large volume of USD in
return for ZAR in a short period of time, PHILLIPS created an

artificial demand for the ZAR, which had the impact of strengthening the ZAR against the USD (i.e. as demand for ZAR increased the ZAR became more expensive). This strengthening of the ZAR against the USD meant that the exchange rate lowered (i.e. a seller of USD would receive less ZAR in return because the ZAR had now become more expensive).

18.   Between shortly before midnight London time on December 25, 2017 (Christmas day) and approximately 12:45 a.m. London time on December 26, 2017 (Boxing Day), NEIL PHILLIPS, the defendant, directed a Singapore-based employee ("CC-1") of a bank ("Bank-3") to sell, on behalf of Hedge Fund-1, a total of approximately $725 million USD in exchange for ZAR.[1]  PHILLIPS explicitly stated to CC-1 that his goal in conducting these USD/ZAR FX spot trades was to drive down the USD/ZAR exchange rate below 12.50.  During the course of that approximately one-hour period, PHILLIPS, through his trading, caused the USD/ZAR rate to fall substantially in this short period of time until the rate went just below 12.50.  As soon as PHILLIPS had achieved his objective and the USD/ZAR exchange rate fell below

---

[1] Bank-3 was acting as a dealer bank in connection with these FX spot transactions and was acting at the direction of PHILLIPS and Hedge Fund-1, who were the customer.  PHILLIPS provided Bank-3 with orders and then Bank-3 sought out counterparties in the market in order to exchange USD for ZAR.

12.50 due to PHILLIPS' manipulative spot trading activity,
PHILLIPS immediately directed that CC-1 cease trading.

19.   NEIL PHILLIPS, the defendant, instructed CC-1 to
conduct this USD/ZAR FX spot trading through Bloomberg chat
messages.  At the time PHILLIPS sent these chat messages,
PHILLIPS was located in South Africa and CC-1 was located in
Singapore.  Other employees of Hedge Fund-1 and Bank-3 were also
participants in the Bloomberg chat room in which PHILLIPS
instructed CC-1 to conduct the USD/ZAR FX spot trading.  These
other participants in the Bloomberg chat room included, among
others, a Hedge Fund-1 employee based in London ("CC-2"), a
Hedge Fund-1 employee that worked in Manhattan, New York, and
employees of Bank-3 based in Manhattan.

20.   In the Bloomberg chat messages between NEIL PHILLIPS,
the defendant, and CC-1, PHILLIPS explicitly directed CC-1 to
continue selling until the USD/ZAR rate fell below 12.50 and
expressly stated that PHILLIPS' purpose in directing these
USD/ZAR spot trades was to drive the USD/ZAR rate below 12.50.
For example:

a.   At approximately 12:09 a.m. London time on
December 26, 2017, PHILLIPS stated, in substance and in part,
"my aim is to trade thru 50."  CC-1 responded, "Ok sure."

9

b.    At approximately 12:16 a.m. London time on December 26, 2017, PHILLIPS stated, in substance and in part, "Need to get it thru 50."

c.    At approximately 12:19 a.m. London time on December 26, 2017, PHILLIPS asked CC-1, in substance and in part, "How much liquidity do u think between now and 50."   CC-1 responded, in substance and in part, "we are the only sellers in the market, we've sold about 100 [million USD] and it's moved about 5 big figures . . . . but I imagine there is much more depth on the bid the closer we get to 12.50."[2]

d.    At approximately 12:25 a.m. London time on December 26, 2017, PHILLIPS again stated, in substance and in part, "Need it to trade thru 50. 4990 is fine."

e.    At approximately 12:27 a.m. London time on December 26, 2017, PHILLIPS, after instructing CC-1 to sell another 100 million USD for ZAR, stated, in substance and in part, "Get it thru."

f.    At approximately 12:31 a.m. London time on December 26, 2017, CC-1 informed PHILLIPS, in substance and in part, that Bank-3 had sold 415 million USD in exchange for ZAR

---

[2] A "figure" is the second decimal point, i.e. .01.  Accordingly, if, for example, a foreign exchange rate moved from 12.56 to 12.51, it would have moved by .05, or "5 big figures."

10

at PHILLIPS' direction thus far and that the lowest exchange
rate the USD/ZAR had hit for the day was 12.5050.  PHILLIPS
responded by asking, in substance and in part, "[h]ow much more
u think to break 50."  CC-1 responded, in substance and in part,
"if it's 100 bux [100 million USD] every 25 pips then at least
another 200."[3]

       g.  At approximately 12:42 a.m. London time on
December 26, 2017, PHILLIPS instructed CC-1, in substance and in
part, to sell an additional 100 million USD in exchange for ZAR
and stated, in substance and in part, "try to get it thru now,"
referring to driving the USD/ZAR exchange rate below 12.50.  CC-
1 stated in response, in substance and in part, "i will let you
know as soon as we sell any below the figure."

       h.  At approximately 12:44 a.m. London time on
December 26, 2017, CC-1 told PHILLIPS, in substance and in part,
"we just sold at 4990." Approximately one minute later CC-1
stated, in substance and in part, "We are finishing now, will be
725 mio [million USD] all day."  PHILLIPS responded, in
substance and in part at approximately 12:45 a.m. London time,
"Pls. [please] get me prof [proof] of the print. And stip [sic]

---

[3] A "pip" is the last (fourth) decimal point, i.e. 0.0001.

stop," referring to the fact that CC-1 should cease trading immediately.

    i.    At approximately 12:47 a.m. London time on December 26, 2017, PHILLIPS asked CC-1, "where is it now."  CC-1 responded, in substance and in part that a particular pricing service was "showing 12.4975 as the low" and asked "[t]hat's sufficient yeah?"  PHILLIPS responded, in substance and in part, "Perfect."

    j.    PHILLIPS thereafter instructed CC-1 to confirm the details of the trade with PHILLIPS' Hedge Fund-1 employee, CC-2. CC-2 and CC-1 thereafter briefly corresponded in the Bloomberg chat room regarding the details surrounding the USD/ZAR trade.

    21.   Following completion of the above-described spot trade, CC-1 sent NEIL PHILLIPS, the defendant, and others a trade summary reflecting that Hedge Fund-1 had sold in total approximately 725 million USD in exchange for approximately 9,070,902,750 ZAR.

    22.   On or about December 26, 2017, in the hours that followed the completion of the above-described USD/ZAR FX spot trading directed by NEIL PHILLIPS, the defendant, the USD/ZAR exchange rate once again increased and returned to levels above

the 12.50 barrier rate and did not go below the rate of 12.50 for the remainder of the day.

### PHILLIPS Causes the Fraudulent Triggering of the $20 Million One Touch Option

23.   Only five minutes after NEIL PHILLIPS, the defendant, caused the USD/ZAR FX spot rate to fall below 12.50, at approximately 12:52 a.m. London time on December 26, 2017, PHILLIPS instructed CC-2 in a Bloomberg chat message, in substance and in part, to notify Intermediary Firm-1 that the $20 Million One Touch Option had been triggered.  Consistent with PHILLIPS' directive, CC-2 thereafter contacted an employee of Intermediary Firm-1 to confirm that the $20 Million One Touch Option had been triggered.  CC-2's email to the employee of Intermediary Firm-1 omitted the fact that the triggering event – the USD/ZAR exchange rate falling below 12.50 – had occurred as a result of the manipulation of the USD/ZAR exchange rate by PHILLIPS.  The employee of Intermediary Firm-1 thereafter confirmed to CC-2 that the $20 Million One Touch Option had been triggered.

24.   Bank-2, which was serving as Hedge Fund-1's prime broker in connection with the $20 Million One Touch Option and with whom Hedge Fund-1 had executed the relevant letter agreement governing the transaction, required confirmation from

both the executing broker and from Hedge Fund-1 that the $20 Million One Touch Option had, in fact, been triggered.  In this regard, on or about December 27, 2017, an employee of Hedge Fund-1 notified Bank-2, in substance and in part, that "[t]he below option level of 12.50 was hit yesterday" and sought to process payment in connection with the triggering of the $20 Million One Touch Option.  This representation by Hedge Fund-1 to Bank-2 that the $20 Million One Touch Option had been triggered omitted the fact that the triggering event – the USD/ZAR exchange rate falling below 12.50 – had occurred as a result of the manipulation of the USD/ZAR exchange rate by NEIL PHILLIPS, the defendant.

25.  The manipulation of the USD/ZAR rate on or about December 26, 2017, caused by NEIL PHILLIPS, the defendant, accordingly, resulted in the $20 Million One Touch Option being triggered, thereby defrauding the parties to the $20 Million One Touch Option and causing Hedge Fund-1 and Client Fund-1 to receive a payment pursuant to the terms of the $20 Million One Touch Option.  In particular, on or about December 27, 2017, Bank-1, in connection with the $20 Million One Touch Option, sent a wire transfer of $20 million to a bank account controlled by a financial institution that was acting as Intermediary Firm-1's broker in connection with the transaction, which wire passed

14

through Manhattan, New York, as a result of the triggering of

the $20 Million One Touch Option.  On or about December 28,

2017, Bank-2, which was acting as Hedge Fund-1's prime broker,

sent a wire transfer of $15,660,000 to a bank account held by

Hedge Fund-1, which wire passed through Manhattan, New York.  On

or about December 28, 2017, Bank-2 also sent a wire transfer of

$4,340,000 to a bank account held by Client Fund-1, which wire

passed through Manhattan, New York.

The Settlement of the Boxing Day USD/ZAR FX Spot Trades

26.   The USD/ZAR spot trades directed by NEIL PHILLIPS, the

defendant, through Bank-3 on December 26, 2017, Boxing Day 2017,

were settled through the Settlement Bank on or about December

28, 2017.  In particular, on or about December 26, 2017, Bank-3

and Bank-2, which was acting as Hedge Fund-1's prime broker in

connection with the trade, communicated settlement instructions

relating to this USD/ZAR spot trade to the Settlement Bank,

which were received by the Settlement Bank in, among other

locations, the United States.  On or about December 28, 2017,

after the Settlement Bank netted out all FX transactions

conducted by Bank-3 and Bank-2 across all 18 currencies settled

by the Settlement Bank, Bank-3 transferred funds in USD into

bank accounts held at the Federal Reserve Bank of New York, and

the Settlement Bank transferred funds from bank accounts held at

the Federal Reserve Bank of New York in USD to Bank-2.

PHILLIPS's Statements to Hedge Fund-1 Investors

27.   In or about January 2018, Hedge Fund-1 sent a

communication to Hedge Fund-1 investors, which was signed by

NEIL PHILLIPS, the defendant, and his co-founder.   This

communication to investors stated, in substance and in part, the

following:

> The stand-out performance within EM [emerging
> markets] during December was, however,
> unrelated to broader market trends and,
> instead, reflected idiosyncratic political
> news in South Africa.
>
> \*      \*      \*
>
> We had anticipated the potential for large
> swings in South African assets around the ANC
> [the African National Congress] electoral
> conference and, in particular, believed that
> the market had priced in too little risk of a
> [Candidate-1] victory. This judgment proved to
> be correct with the market subsequently coming
> to terms with the scope for a more positive
> policy dynamic than seen in South Africa for
> a long time.

28.   Hedge Fund-1's communication to investors in or about

January 2018 further reflected a positive 6 percent return for

the month of December 2017.

29.   Hedge Fund-1's January 2018 communication to

investors, while touting Hedge Fund-1's predictions with respect

16

to South African political events and touting its returns for
the month of December 2017, did not disclose to investors that
NEIL PHILLIPS, the defendant, had intentionally and artificially
manipulated the USD/ZAR exchange rate, nor did it disclose that
PHILLIPS' rate manipulation had caused Hedge Fund-1 to receive a
payment under the $20 Million One Touch Option.

### Statutory Allegations

30.   In or about December 2017, in the Southern District of
New York and elsewhere, NEIL PHILLIPS, the defendant, and others
known and unknown, willfully and knowingly combined, conspired,
confederated, and agreed together and with each other to commit
an offense against the United States, to wit, commodities fraud,
in violation of Title 7, United States Code, Sections 9(1) and
13(a)(5), and Title 17, Code of Federal Regulations, Section
180.1.

31.   It was a part and an object of the conspiracy that
NEIL PHILLIPS, the defendant, willfully and knowingly, would and
did, directly and indirectly, use and employ, in connection with
a swap, a contract of sale of a commodity in interstate and
foreign commerce, or for future delivery on or subject to the
rules of any registered entity, a manipulative and deceptive
device and contrivance, in contravention of Title 17, Code of
Federal Regulations, Section 180.1, by: (1) using and employing,

17

and attempting to use and employ, any manipulative device,
scheme, and artifices to defraud; (2) making, and attempting to
make, any untrue or misleading statement of a material fact and
omitting to state a material fact necessary in order to make the
statements made not untrue or misleading; and (3) engaging, or
attempting to engage in any act, practice, and course of
business which operates and would operate as a fraud and deceit
upon any person, in violation of Title 7, United States Code,
Sections 9(1) and 13(a)(5).

<u>Overt Acts</u>

32.   In furtherance of the conspiracy and to effect the
illegal object thereof, the following overt acts, among others,
were committed in the Southern District of New York and
elsewhere:

a.   On or about December 25, 2017, and December 26,
2017, NEIL PHILLIPS, the defendant, while located outside of the
United States, sent Bloomberg chat messages to CC-1, CC-2, and
others, which messages passed through the Southern District of
New York and were received and accessed by individuals located
in the Southern District of New York, directing USD/ZAR FX spot
trades in furtherance of a conspiracy to defraud involving the
manipulation of the USD/ZAR exchange rate.

18

b.   On or about December 25, 2017, and December 26, 2017, CC-1, acting at the direction of PHILLIPS, caused FX spot trades that resulted in 725 million USD being sold in exchange for ZAR.

c.   On or about December 26, 2017, PHILLIPS sent Bloomberg chat messages to CC-2, which messages passed through the Southern District of New York, instructing CC-2, in substance and in part, to inform Intermediary Firm-1 that the $20 Million One Touch Option had been triggered.

d.   On or about December 26, 2017, as directed by PHILLIPS, CC-2 sent an email to an employee of Intermediary Firm-1 in which CC-2 informed the employee of Intermediary Firm-1 that the $20 Million One Touch Option had been triggered, while not disclosing that the triggering event – the USD/ZAR exchange rate falling below 12.50 – had occurred as a result of the manipulation of the USD/ZAR exchange rate by PHILLIPS.

e.   In connection with the triggering of the $20 Million One Touch Option, PHILLIPS and others caused Bank-1, on or about December 27, 2017, to send a wire transfer of $20 million, which wire passed through Manhattan, New York.

f.   In connection with the triggering of the $20 Million One Touch Option, PHILLIPS and others caused Bank-2, on or about December 28, 2017, to send a wire transfer of

19

$15,660,000 to a bank account held by Hedge Fund-1, which wire passed through Manhattan, New York.

g.   In connection with the triggering of the $20 Million One Touch Option, PHILLIPS and others caused Bank-2, on or about December 28, 2017, to send a wire transfer of $4,340,000 to a bank account held by Client Fund-1, which wire passed through Manhattan, New York.

h.   In connection with the USD/ZAR spot trading that occurred at PHILLIPS' direction on or about December 25 and 26, 2017, PHILLIPS and others caused Bank-2 and Bank-3, on or about December 26, 2017, to transmit settlement instructions to the Settlement Bank relating to settlement of these USD/ZAR spot trades.

i.   In connection with the USD/ZAR spot trading that occurred at PHILLIPS' direction on or about December 25 and 26, 2017, PHILLIPS and others caused the Settlement Bank, on or about December 28, 2017, to settle these USD/ZAR spot trades, and the USD portion of these FX transactions flowed in and out of bank accounts held at the Federal Reserve Bank of New York.

(Title 18, United States Code, Section 371.)

20

**COUNT TWO**
**(Commodities Fraud)**

The Grand Jury further charges:

33.   The allegations contained in paragraphs 1 through 29, and 32 are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

34.   In or about December 2017, in the Southern District of New York and elsewhere, NEIL PHILLIPS, the defendant, willfully and knowingly, directly and indirectly, used and employed, and attempted to use and employ, in connection with a swap, a contract of sale of a commodity in interstate and foreign commerce, or for future delivery on or subject to the rules of any registered entity, a manipulative and deceptive device and contrivance, in contravention of Title 17, Code of Federal Regulations, Section 180.1, by: (1) using and employing, and attempting to use and employ, any manipulative device, scheme, and artifices to defraud; (2) making, and attempting to make, any untrue or misleading statement of a material fact and omitting to state a material fact necessary in order to make the statements made not untrue or misleading; and (3) engaging, or attempting to engage in any act, practice, and course of business which operates and would operate as a fraud and deceit upon any person, to wit, PHILLIPS and others, in connection with

21

the $20 Million One Touch Option, engaged in a scheme involving

the intentional and artificial manipulation of the USD/ZAR

exchange rate and other manipulative and deceptive devices and

contrivances.

(Title 7, United States Code, Sections 9(1) and 13(a)(5); Title
17, Code of Federal Regulations, Section 180.1; Title 18, United
States Code, Section 2.)

## COUNT THREE
### (Conspiracy to Commit Wire Fraud)

The Grand Jury further charges:

35.  The allegations contained in paragraphs 1 through 29,

and 32 are hereby repeated, realleged, and incorporated by

reference as if fully set forth herein.

36.  In or about December 2017, in the Southern District of

New York and elsewhere, NEIL PHILLIPS, the defendant, and others

known and unknown, willfully and knowingly combined, conspired,

confederated, and agreed together and with each other to commit

wire fraud, in violation of Title 18, United States Code,

Section 1343.

37.  It was a part and object of the conspiracy that NEIL

PHILLIPS, the defendant, and others known and unknown, willfully

and knowingly, having devised and intending to devise a scheme

and artifice to defraud, and for obtaining money and property by

means of false and fraudulent pretenses, representations, and

22

promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, PHILLIPS and others, through interstate and foreign messages, telephone calls, and financial transfers, among other means, conspired to fraudulently cause a payment under the $20 Million One Touch Option.

(Title 18, United States Code, Section 1349.)

## COUNT FOUR
### (Wire Fraud)

The Grand Jury further charges:

38.   The allegations contained in paragraphs 1 through 29 and 32 are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

39.   In or about December 2017, in the Southern District of New York and elsewhere, NEIL PHILLIPS, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire and radio communication in interstate and foreign commerce,

23

writings, signs, signals, pictures, and sounds for the purpose

of executing such scheme and artifice, to wit, PHILLIPS and

others, through interstate and foreign messages, telephone

calls, and financial transfers, among other means, including

wires passing through the Southern District of New York, engaged

in a scheme to fraudulently cause a payment under the $20

Million One Touch Option.

(Title 18, United States Code, Sections 1343 and 2.)

### FORFEITURE ALLEGATION

40.   As a result of committing one or more of the offenses

alleged in Counts Three and Four of this Indictment, NEIL

PHILLIPS, the defendant, shall forfeit to the United States,

pursuant to Title 18, United States Code, Section 981(a)(1)(C),

and Title 28, United States Code, Section 2461, any and all

property, real and personal, that constitutes or is derived from

proceeds traceable to the commission of said offenses, including

but not limited to, a sum of money in United States currency

representing the amount of proceeds traceable to the commission

of said offenses.

### Substitute Asset Provision

41.   If any of the above-described forfeitable property, as

a result of any act or omission of NEIL PHILLIPS, the defendant:

24

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c) to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Section 853;
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
DAMIAN WILLIAMS
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

NEIL PHILLIPS,

Defendant.

## SEALED INDICTMENT

22 Cr. ____

(7 U.S.C. §§ 9(1) and 13(a)(5); 17
C.F.R. § 180.1; 18 U.S.C. §§ 371, 1343,
1349, and 2; )

DAMIAN WILLIAMS
United States Attorney.

**A TRUE BILL**

_____ Foreperson.

03/03/22
(CA)

SEALED INDICTMENT FILED
w/ ARREST WARRANT

KN PARKER
USMJ