

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 21, 2023

**BY ECF**

Hon. Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Neil Phillips*, 22 Cr. 138 (LJL)

Dear Judge Liman:

      The Government respectfully submits this letter motion to address three evidentiary issues: First, in light of Andrew Newman's testimony regarding "the purpose" of Phillips's trading, the Government renews its motion to preclude the defendant from offering impermissible state-of-mind and ultimate-issue testimony. Second, the Government writes to request that the Court order the defense to elicit any testimony from Mr. Newman about the terms of the Phillips-Kamath chat in a manner consistent with the Court's directives to the Government's witnesses asked about the same terms. Third, the Government writes in response to the defendant's motion to preclude GX-538-A[1] (ECF Doc. 65), a recording in which Kamath describes his understanding of Phillips's 2:00 AM trading. As described below, GX-538-A, which can be authenticated through brief rebuttal testimony, is relevant and highly probative a key fact in dispute, and is barred neither by Rule 403 nor by the rule against hearsay, as the out-of-court statements constitute both an excited utterance and present sense impression immediately after Phillips's manipulative trading.

      **I.**    **The Court Should Preclude Impermissible State of Mind and Ultimate Issue Testimony**

      In its motions *in limine*, the Government moved to preclude Mr. Newman from offering "impermissible state of mind testimony on the trading strategies and motivations of the Hedge Fund, Defendant, and FX market participants generally." (ECF Doc. 55 at 31 (citing ECF Doc. 40 at 5–10, 12, 19–20)). In response, the "[d]efendant object[ed] to that characterization of Mr. Newman's proposed testimony, contending Mr. Newman can properly opine on 'standard industry practices, market participants' expectations and notions of reasonable conduct, and general information about how investors or traders operate in a particular market.'" (*See* ECF Doc. 55 at 31 (quoting ECF Doc. No. 46 at 14–15)). The Court thereafter denied the Government's motion

---

[1] GX-538-A is a clip of GX-538, which is the full audio recording of the call between Kamath and his supervisor. The Government excerpted GX-538 to avoid including Rosmarin's reaction, speculation, and direction to Kamath to consult compliance.

as moot, noting the agreement of both parties that "'[o]pinions concerning state of mind are an inappropriate topic for expert opinion,' *SEC v. Am. Growth Funding II, LLC*, 2019 WL 1772509, at *1 (S.D.N.Y. Apr. 23, 2019)," and crediting defendant's assurance that "Mr. Newman's testimony will not involve opining on any market participant's motive, intent, or state of mind… as his expert disclosure makes clear." (ECF Doc. 55 at 32).

Mr. Newman's testimony on Friday exceeded the scope of his expert disclosure, as well as the scope represented by the defense in their opposition to the Government's motion *in limine*, by directly opining on Phillip's purpose on December 26, 2017. For example, early in Mr. Newman's testimony, counsel asked Newman, "[B]ased on that analysis what, if any, opinions did you form about trades on December 26, 2017?" and Newman responded, "Yes. So Glen Point's trading on that was part of a delta replacement strategy for the anticipation of the expiration of the 12.50 one-touch option expiring on January 2." (*See* Tr. 966). Mr. Newman also asserted in response to a question about trading on December 19 and December 26 that "what [Glen Point] were basically trying to do was maintain their exposure." (Tr. 971). Mr. Newman's testimony on those points amounted to bare opinion on Phillip's purpose in trading on December 26, 2017 and thus represents the "motive, intent, [and] state of mind" evidence that the defendant assured the Court it would not elicit. (ECF Doc. 55 at 32).

As the Government argued in its motion to preclude Mr. Newman's testimony, interpretations of certain actions and inferences about "the intent and motive" of an individual "lie outside the bounds of expert testimony." *In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004); *see, e.g.*, *Kewazinga Corp. v. Microsoft Corp.*, No. 18 Civ. 4500 (GHW), 2021 WL 4066597, at *15 (S.D.N.Y. Sept. 1, 2021) ("Expert opinions about beliefs, intents, or motives are inadmissible."); *Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank*, No. 9 Civ. 686 (SAS), 2011 WL 6288415, at *8 (S.D.N.Y. Dec. 15, 2011) ("[O]pinions concerning state of mind are an inappropriate topic for expert opinion."). Moreover, expert testimony about the defendant's motive, intent, or state of mind is prohibited under Rules 702 and 704 because it "does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *Rezulin Prods.*, 309 F. Supp. 2d at 541 n.23. As the Court is aware, the defendant's purpose in trading at 2:00 AM is the central issue in dispute in this trial. Expert testimony that the defendant's trading was for the purpose of delta replacement usurps the jury's role as factfinder in this case and seeks to supplant the jury's role with expert testimony that the purpose of the trading was a legitimate one. This testimony is inadmissible under rules 702 and 704. *See* Fed. R. Evid. 702 (requiring that the testimony "will help the trier of fact to understand evidence or determine a fact in issue); Fed. R. Evid. 704(b) (prohibiting an expert in a criminal case from stating "an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense").

To avoid further improper testimony, the Court should direct the defense and its witnesses to conform to the Court's *in limine* ruling and preclude Mr. Newman from opining as to what the defendant or Glen Point was thinking or trying to do when he placed the Boxing Day trades at issue in this case.

II. **The Court Should Direct the Defense to Conform Any Questioning of Mr. Newman About GX-446, the Phillips-Kamath Chat, to the Court's Directives During the Government's Case-in-Chief**

The Court should also direct the defense to conform any testimony it intends to elicit from Mr. Newman regarding the terms of the Bloomberg Chat in Government Exhibit 446 to the term-defining testimony the Government was permitted to elicit through its witnesses. (*See, e.g.*, Tr. 353 (testimony of Srin Iyer)). Mr. Newman was not a participant in the chat between Phillips and Kamath and so cannot say what, in fact, Phillips "meant" when we wrote any particular word. For the same reasons the Government was precluded from eliciting testimony about what the defendant meant in the chat, the defendant should not be permitted to elicit any testimony from Mr. Newman "interpreting" the chat or opining on the defendant's meaning and intent in the chat. In addition to being improper ultimate issue testimony, such testimony would also exceed the scope of Mr. Newman's expert notice: the defense has not provided notice that Mr. Newman would be offering an opinion on what Phillips meant in the Phillips-Kamath chat but rather that he would define industry terminology.

In the event Mr. Newman is permitted to opine on the defendant's strategy, which is informed by his review of Government Exhibit 446, the Government should be permitted to recall Mr. Iyer to rebut this testimony with testimony regarding the interpretation of Government Exhibit 446 from other market participants, either as a lay witness or an expert.

III. **GX-538-A Is Admissible Evidence of a Central Fact in Dispute**

The Government may seek to introduce GX 538-A to rebut defense evidence regarding the meaning and purpose of the language used in the Phillips-Kamath chat. If the Government does elect to offer GX-538-A, the exhibit should be admitted and the defendant's objections to authenticity, relevance, and hearsay should be overruled.

First, GX-538-A can be established to be authentic. Under Rule 901, "[t]he requirement of authentication . . . is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Evidence is properly authenticated if a reasonable juror could find in favor of authenticity. *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004). The proponent need not "rule out all possibilities inconsistent with authenticity, or . . . prove beyond any doubt that the evidence is what it purports to be." *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999). Rule 901 "'does not erect a particularly high hurdle[,]' and may be satisfied by 'circumstantial evidence.'" *United States v. al Fawwaz*, No. 98 Cr. 1023 (LAK), 2015 WL 13514090, at *3 (S.D.N.Y. Feb. 9, 2015).

Here, the Government is prepared to call in its rebuttal case Nadine Cancell, an employee of Nomura in New York, who the Government expects would testify that the recording is a true and accurate portion of a recording maintained by Nomura and received and reviewed by Ms. Cancell as part of an internal investigation into Kamath's conduct. The defendant asserts that the Government concedes an authenticity problem based on notes of an August 16, 2023 call with Nomura's counsel. But all that those notes reflect was Nomura's counsel's concern, as of that date, that testimony regarding authenticity might raise a privilege issue for Nomura, and, as it has turned

out, counsel for Nomura identified Ms. Cancell after August 16, 2023 in response to the Government's request that Nomura provide an authenticity witness. The Government is not aware of any privilege issue that will prevent Ms. Cancell from offering 60 seconds of authenticity testimony about GX-538-A. The defense is also wrong to presume that the Government intends to rely on a business record certification. Though doing so would be proper in some circumstances, here the Government has a live witness in the form of Ms. Cancell.

Moreover, the Government has introduced testimony that Government Exhibit 538 is an audio recording between two people, Rahul Kamath and Trevor Rosmarin. (Tr. 365-66). Government Exhibit 538-A-T also contains content that provides further indicia that it is what it purports to be—that is, a call between Kamath and Rosmarin—in that its participants refer to each other by name ("KAMATH: Hey, Trevor? ROSMARIN: Yeah. Hi, Rahul"), which occurred around Christmas ("KAMATH: So, Merry Christmas, by the way. ROSMARIN: Merry Christmas to you and the family.") and was about the Boxing Day trades at issue in this case ("KAMATH:  Thanks very much. So, we just sold a lot of dollar-rand, for Neil. And I was as generic as possible in the chat, but it was very clear that he was trying to get a print below twelve fifty, so he obviously had some kind of barrier there."). The defendant's remaining objections go to the weight to be accorded the proof of authenticity, not whether sufficient evidence exists to conclude that the recording is what it appears to be.

Second, GX 538-A is highly probative of an issue in dispute in this case, there is no *unfair* prejudice, and, even if there were, and any unfair prejudice from the evidence would not "substantially outweigh" its probative value under Rules 401 and 403. It appears the defense will elicit opinion from Mr. Newman that Mr. Phillips's terminology was ordinary and that there was "nothing nefarious" about directing Kamath to hit bids, trade in size, or ask for a print. But GX-538 is relevant, competent, and direct evidence to the contrary, inasmuch as it demonstrates that the direct recipient of Mr. Phillips's words was so shocked by the defendant's directions that he immediately called his supervisor, notwithstanding the supervisor that was on holiday, to report that Phillips "obviously had some kind of barrier there."

Indeed, whether the defendant's trading instructions constituted ordinary trading behavior or illicit, manipulative trading is a key—indeed, *the* key—fact in dispute in this case, upon which the Government bears the burden of proof. The defense has been permitted throughout this trial to elicit testimony regarding industry understandings and expectations. GX 538-A, in comparison to the speculative testimony that the defense has been permitted to elicit, represents direct and contemporaneous evidence of whether the defendant's directions were, in fact, business-as-usual trading or not. Kamath's reaction to the defendant's instructions has a tendency to make it more probable that the defendant's trading was manipulative, and the evidence is therefore relevant under Rule 401; in fact, the absence of this evidence would leave the jury with the misleading and false impression that a witness to the trading found it unremarkable.

Nor does GX-538-A pose any significant risk of unfair prejudice, particularly given the brevity of the call as excerpted to avoid various potential Rule 403 issues. The defendant contends that the evidence is unfairly prejudicial because the statements "are unduly speculative." (ECF Doc. 65 at 5). Even if this were a basis to find unfair prejudice, it is simply not the case that the statements are "speculative"—the statements are relevant because Kamath is describing what the

defendant told him and his own reaction to the defendant's instructions. There is nothing speculative to the evidence. The defendant also argues—relying on a wholly inapt citation to a decision regarding admissibility of expert testimony—that the evidence "venture[s] into legal opinion testimony." (*Id.*). Again, in effort to gin up unfair prejudice where there is none, the defendant resorts to mischaracterizing the evidence; the statements—much like the testimony the defendants has elicited during this trial—concern the reactions of the declarant (who is not an attorney) to and view of the defendant's instructions, and do not offer any legal opinion. Perhaps most importantly though, none of the purported prejudices argued by the defendant are *unfair* prejudice under Rule 403; the evidence does not encourage the jury to convict on any impermissible basis, it simply offers relevant and probative evidence, like other evidence that has been offered during this trial, concerning the character and regularity or irregularity of the defendant's instructions within the world of FX trading. Moreover, the absence of any prejudice is especially true if the defense offers testimony about what the defendant intended when he placed the Boxing Day trades—such as from the defendant himself—or otherwise elicits testimony that his words on Boxing Day could not be understood to reveal a manipulative purpose. *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) ("[A]ny proof highly probative of guilt is prejudicial to the interests of that defendant. The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980))).

       Third, GX-538 is not barred by the rule against hearsay because the statements constitute a present sense impression and excited utterance, and are also admissible not for the truth of statements but rather for the fact of Kamath's reaction. *See* Fed. R. Evid. 803(1), (2).[2]

       GX-538 reflects a call that occurs "just" after Phillips's trades and reflects the alarm and contemporaneous perceptions of the trader, Kamath. The excited utterance exception to the hearsay rule permits the admission of a hearsay "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). "The rationale for this hearsay exception is that the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability." *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir. 1998). The diction, tone, and timing of the conversation captured in GX-538 supports the conclusion that Kamath was reacting to the startling nature of Phillip's trading.

       Similarly, the present sense impression exception to the rule against hearsay permits the admission of a hearsay "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). "Such statements are considered trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory." *United States v. Jones*, 299 F.3d 103, 112 (2d Cir. 2002). As the Second Circuit has repeatedly recognized, "precise contemporaneity is not required" for a present sense impression. *United States v. Ibanez*, 328 F. App'x 673, 675 (2d Cir. 2009). GX-538-A reflects a call "just" after Kamath sold "a lot of dollar-rand" for Phillips. Kamath plainly recounts what he just perceived—that Phillips had sold a lot of dollar-rand "to get

---

[2] The Government does not seek to offer GX-538 pursuant to Rule 801(d)(2)(E).

a print below twelve fifty" because "he obviously had some kind of barrier there." These contemporaneous impressions fit squarely within Rule 803(1).

Further, though the statements are admissible for their truth, pursuant to Rule 803(1) and 803(2), they are also relevant merely for the fact they were made, and therefore admissible not for the truth of the facts stated. The two factual assertions made by Kamath—that Nomura had just sold a substantial amount of dollar-rand for Neil Phillips and that Neil Phillips had a barrier option—are both uncontested at this trial. Kamath's statement is significant because it demonstrates that Phillips's trading was remarkable in its size and that Phillips's commands alone caused Kamath to deduce that Phillips had a barrier option, and therefore the evidence is also admissible not for the truth of the facts stated, but instead for the fact that Kamath reacted in the way that he did.

Finally, there can be no credible argument that Government Exhibit 538-A presents a Confrontation Clause problem, because it is not testimonial in nature. The Confrontation Clause bars admission of "testimonial statements" in a criminal case where the defendant does not have the opportunity to cross-examine the author of such statements. *Crawford v. Washington*, 541 U.S. 36 (2004). The Supreme Court has applied the "primary purpose" test in defining whether a given statement is "testimonial," which requires that "the statement was made or procured with a primary purpose of 'creating an out-of-court substitute for trial testimony.'" *Washington v. Griffin*, 876 F.3d 395, 404 (2d Cir. 2017) (quotation marks and alteration omitted) (quoting *Ohio v. Clark*, 576 U.S. 237, 245 (2015)); *see also Garlick v. Lee*, 1 F.4th 122, 129 (2d Cir. 2021) (defining the "'core class'" of testimonial statements as those involving (1) "'*ex parte* in-court testimony or its functional equivalent – that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially'"; (2) "'extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions'"; and (3) "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial'" (quoting *Crawford*, 541 U.S. at 51-52)). Here, the call contained in Government Exhibit 538-A was made on a recorded Nomura line between two Nomura Singapore employees in 2017, years before any criminal investigation into the trades at issue. It thus could not remotely have been created for the "primary purpose" of being used in this case.

For the foregoing reasons, the defense should be precluded from eliciting Mr. Newman's opinions about Phillips's state of mind, the defense should be required to conform its questions about the Phillips-Kamath chat to the framework that applied to the Government's witnesses, and the defendant's objections to Government Exhibit 538-A should be overruled.

    Respectfully Submitted,

    DAMIAN WILLIAMS
    United States Attorney

by: _____
    Thomas S. Burnett
    Kiersten A. Fletcher
    Andrew Thomas
    Assistant United States Attorneys